

# THE ATTORNEY GENERAL

# OF TEXAS

### AUSTIN 11, TEXAS

PRICE DANIEL
ATTORNEY GENERAL

August 24, 1948

Hon. Geo. H. Sheppard
Comptroller of Public Accounts
Austin, Texas

Opinion No. V-668

Re: Whether inheritance
tax due on receipt of
decedent's interest
in certain life insur-
ance policies.

Dear Sir:

You have requested the opinion of this office on the
above-captioned matter under submitted facts which we quote
from your letter of March 10, 1948:

"John H. Frost II died on December 15, 1945,
. . . He died testate and appointed the Frost Na-
tional Bank of San Antonio executor of his estate.

"An inheritance tax report for his estate has
been filed, and the value of all assets reported by
the executor has been agreed upon between the ex-
ecutor and this department; but there is a contro-
versy between the executor and this department as
to the inclusion of the cash value of six insurance
policies taken out by decedent's father upon his
own life and assigned in 1937 to the decedent and
his brother jointly, or the survivor of them. Both
J. H. Frost, Sr., the father, and J. H. Frost, Jr.,
the brother, survive decedent.

"Upon the date of death of John H. Frost II, the
six insurance policies had a cash surrender value
of $181,254.81, and we have included one-half of this
value ($90,627.40) as a part of the estate of John H.
Frost II. By this inclusion, the tax has been increas-
ed approximately $4,483.00. . . ."

Further information regarding the nature of the decedent's in-
terest in the policies is given in the accompanying letter of the
attorney for the executor, which letter contains copies of the
assignment of the Great Southern Life Insurance policy (in the
amount of $50,000), the requests for change of life owner on
five Aetna Life Insurance policies (in the total amount of $400,-
000), and the endorsements on the five policies showing the

change of Life Owner. The Great Southern Life policy was as-
signed to "Joseph Hardin Frost, Jr., and John Frost, II, share
and share alike or survivor. . ."; and the Life Owner designation
on four of the Aetna policies reads, in part, as follows:

"Until the death of Joseph H. Frost, Jr. and
John Frost, II, sons of the insured, said sons,
jointly, or the survivor shall be the life owner.

"After the death of the survivor of said sons
the executors or administrators of such survivor
shall be the life owner."

The life owner designation of the fifth policy, No. N-797,-
783 omitted the words, "or survivor" following "jointly." The at-
torney's letter states that "the discrepancy between the request
for change and the endorsement made on the policy was apparent-
ly due to an error in transcribing from the request to the endorse-
ment and that the request for change and the intention of J. H. Frost,
Sr. as shown in that request . . . was controlling." We concur in
this conclusion, particularly in view of the provision relating to the
death of the survivor.

To recapitulate, J. H. Frost, Sr., who is still alive, took
out policies of insurance payable to his two sons, John Frost II and
J. H. Frost, Jr. In addition to being beneficiaries, the two sons be-
came, by virtue of the assignments described above, the owners of
the policies and entitled to various benefits thereunder, including
the cash surrender value of the policies. One of the sons, John
Frost II, has now died; and the question is whether the receipt of
his interest in these policies by the surviving son is subject to the
Inheritance Tax levied by Article 7117, V.C.S.

The pertinent provisions of Article 7117 are as follows:

"All property within the jurisdiction of this State,
real or personal, corporate or incorporate, and any
interest therein, including property passing under a
general power of appointment exercised by the dece-
dent by will, including the proceeds of life insurance
to the extent of the amount receivable by the executor
or administrator as insurance under policies taken
out by the decedent upon his own life, and to the ex-
tent of the excess over Forty Thousand Dollars ($40,-
000.00) of the amount receivable by all other benefi-
ciaries as insurance under policies taken out by the
decedent upon his own life, whether belonging to in-
habitants of this State or to persons who are not in-
habitants, regardless of whether such property is lo-
cated within or without this State, which shall pass

> absolutely or in trust by will or by the laws of de-
> scent or distribution of this or any other State, or
> by deed, grant, sale, or gift made or intended to
> take effect in possession or enjoyment after the
> death of the grantor or donor, shall, upon passing
> to or for the use of any person, corporation, or
> association, be subject to a tax for the benefit of
> the State's General Revenue Fund, in accordance
> with the following classification; . . ."

The attorneys for the executor take the position that "the assignment of the Great Southern Life policy and the endorsements on the Aetna Life policies by their terms constituted Joseph Hardin Frost, Jr. and John Frost II, joint owners, with right of survivorship;" that "the contractual provisions for survivorship resulted in the policies being owned by Joseph Hardin Frost, Jr. and John Frost II as joint tenants, with right of survivorship. . . 'with all the rights of such tenants in common law, including the right of survivorship;'" and that the provisions of Article 7117, above quoted, do not impose a tax upon the privilege of receiving an interest in a joint tenancy by the surviving joint tenant.

Although Article 2580, V.C.S., abolished the doctrine of jus accrescendi in this State, it is settled that parties may, by contract, will, or deed of conveyance, create a common law joint tenancy, with its accompanying incident of survivorship. Chandler v. Kountze, 130 S.W. 2d 327.

The first question, then, is whether or not a common law joint tenancy has, in fact, been created in this case.

"In a joint tenancy there are said by Blackstone to be four unities, to wit, unity of interest, unity of title, unity of time, and unity of possession, or, in other words, joint tenants have one and the same interest accruing by one and the same conveyance, commencing at one and the same time, and held by one and the same undivided possession. Of these unities, only the unity of possession exists in all forms of co-ownership." Tiffany, Law of Real Property, § 418. The joint tenants have together but one estate which each joint tenant owns conjointly with the other co-tenant. "Each joint tenant is regarded as the tenant of the whole for purposes of tenure and survivorship, while for purposes of alienation and forfeiture each has an undivided share only . . . The leading characteristic of joint tenancy is the fact that, on the death of one joint tenant, the other joint tenant or tenants who may survive him, if it is an estate of inheritance, have the whole estate. . . The survivor takes no new title by survivorship, but holds under the deed by virtue of which he was originally seized of the whole." Tiffany, Law of Real Property, §§ 418, 419.

The law is well settled that a joint tenancy may exist in personal property. 11 Tex. Jur. 418. In the brief submitted by the attorneys for the executor the various characteristics of a joint tenancy are discussed in some detail, and much emphasis is placed on the doctrine of survivorship as the distinguishing incident of title by joint tenancy for the purpose of supporting their contention that these policies were held in joint tenancy. However, no mention is made of the fact that the destruction of any one of the aforenamed unities results in a "severance" of the joint tenancy. For example, if one of two joint tenants disposes of his interest, the other joint tenant and the grantee become tenants in common. Tiffany, Law of Real Property, § 425. In other words "by its very nature a joint tenancy is always revocable by conveyance at the option of either joint tenant." Gleason and Otis, Inheritance Taxation. We think that the assignment of the Great Southern Life policy, the requests for change, and the endorsements on the Aetna policies deny this option to the cotenants of these policies. The brief of the attorneys for the executor contains a copy of a letter dated April 14, 1948, from Mr. D. P. Cavanaugh, a member of the Legal Department of the Aetna Life Insurance Company, to Mr. E. A. Sibley, Trust Officer of the Frost National Bank. We quote the following excerpt from this letter:

> "While John Frost II and Joseph Frost, Jr., were both living we would not have allowed either of them to take any action with respect to these policies except by their joint action."

This result is in line with Tiffany's criticism of regarding a gift to two or more persons and the survivor or survivors of them as showing an intention to create a joint tenancy. The following quotation is taken from Tiffany on Real Property, § 425:

> ". . . But whether the mere fact that the donor indicates an intention that the survivor or survivors shall take should be given such an effect appears to be open to question. The right of survivorship is merely one incident of a joint tenancy. Another incident of such tenancy is that any one of the tenants can destroy it, with the incidental right of survivorship, by a conveyance to a third person, and when one makes a gift to two or more with the right of survivorship, it appears to be a reasonable conclusion that he has in mind an indestructible right of survivorship. The view that there is in such a case a tenancy in common for life with a contingent remainder in favor of the survivor, or even that there is a tenancy in common in fee simple with an executory limitation in favor of the survivor, might seem more in accord with the intention of the grantor or testator."

Holding, as we do, that no joint tenancy existed in these policies, it is not necessary to decide whether or not the privilege of receiving the interest of a deceased joint tenant may be subject to tax by virtue of the provisions of Article 7117, V.C.S. Nor in the view we take of the language of that article is it necessary to decide the exact nature of the interest of John H. Frost II in these policies. Article 7117 taxes "property . . . passing under a general power of appointment exercised by the decedent by will. . ." This provision is obviously inapplicable as is the provision regarding insurance "under policies taken out by the decedent upon his own life." (Emphasis added) Nor did the "property . . . pass absolutely or in trust by will or by the laws of descent and distribution. . ." The only provision left is that which makes subject to tax transfers "by deed, grant, sale or gift made or intended to take effect in possession or enjoyment after the death of the grantor or donor. . ." As to this provision, John Frost II was not the "grantor or donor '" of his interest but was, in fact, one of two donees, who took his interest subject to the condition made by the original donor, by virtue of which condition his interest ceased at his death and passed to Joseph H. Frost, Jr.

We are therefore of the opinion that the receipt of John H. Frost II's interest in the six insurance policies was not accomplished by any of the methods of transfer enumerated in Article 7117, V.C.S. If the Legislature so desires, this type of transfer could result in the imposition of inheritance taxes by the inclusion in Article 7117 of a provision similar to that found in Section 811(e) of the Federal Estate Tax Act, Ch. 3, Title 26, Internal Revenue Code, U.S.C.A. This provision of the Federal Act applies to and brings within the scope of the Act all classes of property whether real or personal in case the survivor takes the entire interest therein by right of survivorship, and no interest therein forms a part of the decedent's estate for purposes of administration. Reg. 105, Sec. 81.22; Paul, Federal Estate and Gift Taxation, Vol. 1, § 8.04. However, until some such provision is embodied in our law, the receipt of a decedent's interest which is accomplished in the manner presented by the facts of this case escapes the provisions of our Inheritance Tax Law; and no tax is due the State by reason of the provisions of Ch. 5, Title 122, V.C.S.

## SUMMARY

Where a third party makes a valid gift of insurance policies on his own life to two persons "or survivor," neither co-owner having the right acting alone to affect the interest of the other in the policies or his right to take as survivor, no inheritance tax is

levied by Article 7117, V.C.S., on the survivor's
receipt of the deceased co-owner's interest.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By  *Marietta Creel*
Mrs. Marietta Creel
Assistant

MC/JCP

APPROVED

*Price Daniel*
ATTORNEY GENERAL